UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULETTE MARTIN,

        Plaintiff,                      Hon. Paul L. Maloney

v.                                                Case No. 1:08-CV-317

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

In response to Plaintiff's action, Defendant asserts that the Commissioner's decision is *not* supported by substantial evidence and, therefore, requests that the Commissioner's decision be reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g). (Dkt. #20). Plaintiff opposes Defendant's motion to remand on the ground that such is unnecessary because the evidence of her disability is "compelling." As discussed below, the Court finds that the Commissioner's decision is not supported by substantial evidence, but that proof of Plaintiff's disability is not compelling. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and

recommendations for disposition of social security appeals, the undersigned recommends that Defendant's motion to remand be **granted** and the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from

its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 50 years of age at the time of the ALJ's decision. (Tr. 19-20). She completed the ninth grade[1] and has no past relevant work experience. (Tr. 18-19).

Plaintiff applied for benefits on September 16, 2005, alleging that she had been disabled since January 1, 2003. (Tr. 13). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 21-43). On November 16, 2007, Plaintiff appeared before ALJ Robert Senander, with testimony being offered by Plaintiff. (Tr. 175-98). In a written decision dated November 30, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 13-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 2-4).

---

[1] While the ALJ found that Plaintiff only completed the ninth grade, treatment notes indicate that Plaintiff once related an incident that allegedly occurred to her when (according to Plaintiff) she was in the eleventh grade. (Tr. 72).

Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

Treatment notes dated May 31, 2005, reveal that Plaintiff "shops, cooks, [and] takes care of the house." (Tr. 131). X-rays of Plaintiff's left shoulder, taken July 27, 2005, revealed "mild" degenerative changes at the AC joint with no evidence of fracture, dislocation, or impingement. (Tr. 85).

On August 26, 2005, Dr. Jennifer Shockley completed a report concerning Plaintiff's limitations. (Tr. 97-98). The doctor reported that she first examined Plaintiff on July 14, 2005. (Tr. 97). Dr. Shockley reported that Plaintiff experienced decreased range of motion in her lumbar spine and pain and decreased range of motion in her left shoulder. (Tr. 97). The doctor also reported that Plaintiff experienced cognition and comprehension difficulties. (Tr. 97). Dr. Shockley concluded that Plaintiff could occasionally lift 20 pounds, but could never lift 25 pounds. (Tr. 28). The doctor reported that during an 8-hour workday, Plaintiff could stand and/or walk for "at least 2 hours" and could sit for "less than 6 hours." (Tr. 98).

X-rays of Plaintiff's lumbar spine, taken September 28, 2005, revealed "severe degenerative disc disease at L5-S1," but no evidence of "acute process" or "destructive change." (Tr. 82).

On October 2, 2005, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed "advanced disk space degenerative disease" at C5-6 and C6-7 with "mild" central canal stenosis. (Tr. 80-81). There was also evidence of "abnormal straightening

4

of the cervical spine through [the] lower cervical levels." (Tr. 80-81). An MRI examination of Plaintiff's left shoulder, performed the same day, revealed degenerative changes of the AC joint and impingement of the supraspinatus muscle, but no evidence of tendinitis or tendinosis. (Tr. 81).

X-rays of Plaintiff's chest, taken October 12, 2005, were unremarkable with "no active infiltrate, congestive heart failure, pleural effusion or pneumothorax." (Tr. 79).

On February 10, 2006, Plaintiff was examined by Steven Reppuhn, Ph.D. (Tr. 71-76). Plaintiff reported that she was disabled due to back pain and carpal tunnel syndrome. (Tr. 71). Plaintiff reported she was experiencing neck pain which rated 5 on a scale of 1-10 and back pain which rated 6 on a scale of 1-10. (Tr. 71). Plaintiff reported that she experienced difficulty sitting or standing "for very long." (Tr. 71). Plaintiff initially reported that she only completed the ninth grade, but later related an incident that allegedly occurred when she was in the eleventh grade. (Tr. 71-72). Plaintiff reported that she was unable to pass the G.E.D. examination. (Tr. 72).

Plaintiff reported that she gets along "fine" with co-workers and employers and "never had any problems with anybody." (Tr. 73). Plaintiff reported that she "takes care of her own bathing, dressing and household chores." (Tr. 73). The results of a mental status examination were unremarkable. (Tr. 74-76). Plaintiff was diagnosed with depressive disorder and her GAF score was rated as 60.[2] (Tr. 76).

On February 24, 2006, Ronald Marshall, Ph.D, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 53-66). Determining that Plaintiff

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.*

suffered from borderline intellectual functioning and an affective disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) and Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 54-62). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 63). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 63).

Dr. Marshall also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 67-69). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, the doctor reported that Plaintiff was "not significantly limited." (Tr. 67-68). Dr. Marshall concluded that Plaintiff retained the ability to perform "unskilled tasks" on a sustained basis. (Tr. 65).

On February 28, 2007, Scott Walker, Rehabilitation Manager for Key Opportunities, Inc., authored a letter concerning Plaintiff's employment with his organization. (Tr. 173). Walker reported that Plaintiff was employed at Key Opportunities from January 29, 2002, through December 16, 2002. (Tr. 173). Plaintiff "was assigned to sedentary-sit down assembly jobs that could be done with one hand or limited use of the left hand." (Tr. 173). Plaintiff was later subject to the following additional restrictions: (1) no repetitive lifting of more than 20 pounds, (2) no prolonged standing, and (3) no repetitive gripping with her left hand. (Tr. 173). Walker reported that Plaintiff "got along with others and followed directions well." (Tr. 173). Walker concluded that Plaintiff "was capable

of performing the assembly and inspection tasks she was given at Key Opportunities as long as she worked within her restrictions." (Tr. 173).

At the administrative hearing, Plaintiff testified that she washes dishes, sweeps and mops her floors, washes laundry, and vacuums around her house. (Tr. 191-93). Plaintiff reported that she can sit for 20-30 minutes and stand for 15-20 minutes at one time. (Tr. 186, 193). Plaintiff reported that she reads and rides a moped. (Tr. 188, 194). Plaintiff also reported that she worked regularly as a porter during her time in prison. (Tr. 190).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

7

impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) borderline intellectual functioning; (2) major depressive disorder; (3) carpal tunnel syndrome; (4) obesity; (5) degenerative disc disease; and (6) diabetes mellitus. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15). The ALJ found that while Plaintiff had no past relevant work experience, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 15-20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Not Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the

burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can occasionally lift/carry/push/pull 20 pounds and frequently lift/carry/push/pull 10 pounds; (2) during an 8-hour workday, she can stand/walk for at least 6 hours and sit for about 6 hours; (3) she cannot climb ladders, ropes, or scaffolds; (4) she can occasionally crouch, crawl, climb ramps and stairs, and perform grasping/gripping activities; (5) she cannot kneel, crawl, or be exposed to respiratory irritants or vibration hazards; and (6) she can perform simple, 1-2 step tasks on a regular and continuing basis. (Tr. 16). Finding that Plaintiff could perform the full range of light work, the ALJ relied on Rule 202.10 of the Medical-Vocational Guidelines to conclude that Plaintiff was not disabled.

1. The ALJ Improperly Relied on the Medical-Vocational Guidelines

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2 § 200.00(a). Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a

9

particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).

The grids, however, only take into consideration a claimant's exertional limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of available work," use of the grids alone to make a disability determination is inappropriate. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 423-24 (6th Cir. 2008). As the Sixth Circuit has held, "where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Id.* at 424.

In the present case, the ALJ found that Plaintiff suffered from borderline intellectual functioning and major depressive disorder, nonexertional impairments that limited her, in part, to the performance of simple, 1-2 step job tasks. The ALJ further determined, however, in conclusory fashion, that Plaintiff's nonexertional limitations "have little or no eroding effect on the occupational base of unskilled light work." (Tr. 19). Having made this determination, the ALJ relied solely on the grids to find that Plaintiff was not disabled. The ALJ did not question a vocational expert (or consult any other source) regarding the impact that Plaintiff's nonexertional impairments would have on the number of jobs which she might be able to perform. In short, the ALJ has identified no evidence to support his conclusion that Plaintiff's nonexertional impairments would not significantly impact the number of jobs she could perform.

The Court recognizes that certain observations and conclusions are so well accepted or obviously reasonable that express indications of analysis or evidentiary support are not necessary.

In the Court's estimation, however, the present circumstance does not fit within that category. *See* Titles II and XVI: Capability to do Other Work - the Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, SSR 83-14, 1983 WL 31254 at *4-5 (S.S.A. 1983) (recognizing that an ALJ will often require the assistance of a vocational expert when determining whether certain nonexertional limitations, such as borderline intellectual functioning, significantly restrict the range of available work); *Kowalczyk v. Barnhart*, 2002 WL 226870 at *8 (N.D. Ill., Feb. 14, 2002) (recognizing that borderline intellectual functioning is "a significant nonexertional impairment," the significance of which requires the assistance of a vocational expert).

The Court concludes, therefore, that the ALJ's conclusion that Plaintiff's nonexertional limitations "have little or no eroding effect on the occupational base of unskilled light work" is not supported by substantial evidence. Thus, the ALJ's reliance on the grids alone to support his conclusion that Plaintiff was not disabled is improper and renders his decision invalid.

b. The ALJ Failed to Properly Evaluate Dr. Shockley's Opinion

As noted above, Dr. Shockley expressed the opinion, in an August 26, 2005 report, that Plaintiff was limited to an extent beyond that recognized by the ALJ. (Tr. 97-98). In his decision, however, the ALJ completely ignored Dr. Shockley's opinion. As Defendant correctly observes, because Dr. Shockley was one of Plaintiff's treating physicians, the ALJ's failure in this regard invalidates the ALJ's decision.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit has made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case

> record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

As previously noted, the ALJ failed to articulate any rationale for his decision to accord less than controlling weight to Dr. Shockley's opinion. In light of the fact that the doctor's opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not insignificant. The ALJ's failure in this regard clearly violates the principle articulated in *Wilson* and renders his decision invalid.

c. Evidence of Plaintiff's Disability is not Compelling

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and

13

proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled.

The present record does not contain a wealth of objective medical evidence and that which is present does not constitute compelling evidence that Plaintiff is disabled. The record consists primarily of treatment notes reflecting Plaintiff's subjective complaints and observations. In such a circumstance, resolution of Plaintiff's claim will likely depend to a great extent on whether Plaintiff is found to be a credible witness. This Court is neither authorized nor competent to make such credibility determinations.

The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded so that Plaintiff's claim for benefits can be assessed anew in accordance with the relevant standards.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that Defendant's motion to remand, (dkt. #20), be **granted** and the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 9, 2009        /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge